UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ **X**

| | | |
|---|---|---|
| AMILCAR BOSCAN, | **:** | |
| | **:** | |
| | **:** | |
| Plaintiff, | **:** | Index No. 26-cv-6148 |
| - against- | **:** | |
| | **:** | **COMPLAINT** |
| ELMALO, INC. d/b/a WILLIE COLON MUSIC | **:** | |
| COMPANY, | **:** | **JURY TRIAL REQUESTED** |
| | **:** | |
| Defendant. | **:** | |

------------------------------------------------------------ **X**

Plaintiff Amilcar Boscan ("Boscan" or "Plaintiff"), by and through his undersigned

attorneys, hereby files this Complaint against Defendant ElMalo, Inc. d/b/a Willie Colon Music

Company ("WCM" or "Defendant"), and alleges as follows:

## **NATURE OF THIS ACTION**

1.      This is an action for (i) breach of contract, (ii) unjust enrichment, (iii) conversion,

(v) rescission; (vi) declaratory judgment of copyright termination; and (vii) violation of the

Digital Millennium Copyright Act through removal of copyright management information.

2.      Effective December 1, 1994, Plaintiff – a songwriter – entered into a Songwriter

Agreement (the "Songwriter Agreement") with Defendant WCM – a music publishing company.

A true and correct copy of the Songwriter Agreement is attached hereto as **Exhibit A** and

incorporated herein.

3.      In the Songwriter Agreement, Plaintiff conveyed his rights in certain musical

compositions to Defendant, and Defendant agreed to pay Plaintiff 50% of the royalties collected

from the compositions, and to send Plaintiff royalty statements on a regular basis.

4.      Defendant failed to pay, and continues to fail to pay, the vast majority of the

royalties that are owed to Plaintiff under the Songwriter Agreement.

1

5. Defendant failed to send, and continues to fail to send, royalty statements to Plaintiff as required by the Songwriter Agreement.

6. Because Defendant has violated, and continues to violate, these fundamental provisions of the Songwriter Agreement, Defendant is in material breach of the Songwriter Agreement, and Plaintiff is entitled to termination and rescission of the Songwriter Agreement.

7. In the alternative, Defendant has benefitted from its improper behavior, constituting unjust enrichment and conversion of the monies owed to Plaintiff.

8. Plaintiff seeks damages from Plaintiff arising from Defendant's breaches of the Songwriter Agreement (or, in the alternative, from Defendant's wrongful unjust enrichment or conversion), which damages are far in excess of $300,000.

9. In addition, Plaintiff seeks immediate rescission of the Songwriter Agreement due to Defendant's material violations that substantially defeated the purpose of the Songwriter Agreement and deprived Plaintiff of the benefit of the bargain.

## THE PARTIES

10. Plaintiff Amilcar Boscan is a citizen of Venezuela, residing in Venezuela.

11. Upon information and belief, Defendant ElMalo, Inc. d/b/a Willie Colon Music Company is a New York Corporation with its principal place of business in New Rochelle, New York.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant, and because the amount in controversy exceeds the jurisdiction requirement of $75,000, exclusive of costs and interest.

13. This is a declaratory judgment action arising under the Declaratory Judgment Act,

2

28 U.S.C. §§ 2201 and 2202.

14.    Personal jurisdiction and venue in this district is proper as to Defendant pursuant to 28 U.S.C. § 1391(b) (2) and (3), and because Plaintiff and Defendant agreed "only New York courts shall have jurisdiction over any controversies arising out of or relating to [the Songwriter Agreement] or the performance thereof, and that any such controversies shall be submitted only to the New York Courts."  Songwriter Agreement § 16.

## BACKGROUND FACTS

15.    Plaintiff ("Writer") and Defendant ("Publisher") entered into the Songwriter Agreement effective December 1, 1994.

16.    Plaintiff conveyed his rights in certain musical compositions to Defendant, identified at the top of the first page as "CAER EN GRACIA" and "TALENTO DE TELEVISION" ("TDT") (together, the "Compositions"):

> Writer hereby sells, assigns, transfers and delivers to publisher, its successors and assigns, a certain original musical composition, written and/or composed by Writer, now entitled:
>
> (hereinafter called the "Composition") including the title, words and music thereof, and each and every arrangement thereof, and all of Writer's right, title and interest therein, and all rights, claims and demands in any way relating thereto, and any and all copyrights thereof previously obtained, and the right to secure copyright therein throughout the entire world and to have and to hold said copyright and other rights therein and all rights of whatsoever nature thereunder now hereafter existing (including, without limitation, any and all renewals and extensions of the copyright therein, and any and all benefits, revenue, monies or income accruing therefrom, and the right to make, give and authorize a dramatic representation of the composition and/or to dramatize the title, music, lyrics, plot and/or story thereof. In the event this agreement refers to more than one Composition, reference to "Composition" shall be deemed reference to each such composition).

Songwriter Agreement § 1.

17.    In exchange, Defendant agreed to pay Plaintiff, among other things:

> (b) 50% of all net sums received by Publisher with respect to the Composition pursuant to any license issued by, or on behalf of the Publisher, authorizing the use of the Composition in the United States of America and/or Canada for any of the following
>
> > (1) phonographic records
> > (2) electrical transcriptions
> > (3) sound synchronization of the Composition in motion pictures….
>
> (d) 50% of all net sums received by Publisher with respect to the Composition from any use of the Composition not delt [sic] with elsewhere in this agreement, provided the Writer is not paid, or to be paid, for such use directly or indirectly by a third party.

Songwriter Agreement §§ 3(b) & 3(d).

18.    The Songwriter Agreement specifically identified the Compositions, and specifically assigned a 100% share in each of them to Plaintiff.

19.    In other words, Defendant agreed to pay Plaintiff 100% of 50% of the net royalties collected for each of the Compositions under sections 3(b) and 3(d) shown above.

20.    As further consideration for Plaintiff's conveyance of his rights in the musical compositions to Defendant, Defendant agreed to send regular royalty statements to Plaintiff:

> Publisher will compute the amounts payable to Writer hereunder, within (90) days after June 30th, and December 31st of each year during which royalties shall accrue to the Writer under this agreement, or the preceding six (6) month period, and will render accounting for, and pay such royalties, less any unrecouped advances under this and/or any other agreement between Writer and Publisher, if and when earned, within such (90) ninety days.

Songwriter Agreement § 5(a).

21.    Plaintiff performed all of his obligations in accordance with the Songwriter Agreement and conveyed his rights in the Compositions to Defendant.

22.    However, Defendant never paid Plaintiff the vast majority of the royalties owed

4

under the Songwriter Agreement, and Defendant never sent Plaintiff the royalty statements as required by the Songwriter Agreement.

23. At various times from July 2024 through March 2026, Plaintiff provided written notice to Defendant of its failure to pay and failure to report to Plaintiff under the Songwriter Agreement.

24. Upon information and belief, until his death on February 21, 2026, Defendant was owned and controlled, in whole or in part, by William Anthony Colón Román, popularly known as "Willie Colon" ("Colon").

25. During his lifetime, Colon was among the most popular and successful musicians and recording artists in the "Salsa" genre of music.

26. TDT was recorded by Colon and by other Salsa singers.

27. Colon's recording of TDT has been extremely successful. At more than four hundred thirty million (430,000,000) streams on Spotify alone as of May 3, 2026.

28. Colon's recording of TDT is the most successful recording by Colon on Spotify, the largest paid music streaming service in the world.

29. By contrast, the second most popular recording by Colon on Spotify had less than two hundred eighty million (280,000,000) streams, as of the same date.

30. In addition, recordings of TDT have been streamed hundreds of millions of times on platforms *other than* Spotify, including without limitation YouTube and Apple Music.

31. In view of the foregoing, Plaintiff maintains, upon information and belief, that significant royalties are due to be paid by Defendant to Plaintiff arising from, *inter alia*, the exploitation of TDT.

32. Plaintiff seeks from Defendant full reporting and full payment of all royalties due

5

under the Songwriter Agreement.

33.    In addition, Defendant registered TDT with Broadcast Music, Inc. ("BMI"), falsely representing Colon to be the composer of TDT.

34.    On July 3, 2024, Plaintiff served on Defendant a Notice of Termination Under Section 17 U.S.C. § 203 (the "Termination Notice").  A true and correct copy of the Termination Notice and the accompanying transmittal letter are attached hereto as **Exhibit B** and incorporated herein.

35.    The Termination Notice provided all of the following information:

> Reference is hereby made to the songwriter contract (the "Songwriter Contract") between Amilcar Boscan ("Author") and Willie Colon Music Co ("Grantee") dated as of December 1st, 1994, as amended….
>
> (1) Name and address of each grantee or grantee's successor in title whose license or transfer is being terminated: ELMALO, Inc (on information and belief, as successor in title to Willie Colon Music Co.) 1333a North Avenue - 153, New Rochelle, NY 10804
>
> (2) Identification of Grant Being Terminated: the Songwriter Contract (as defined above).
>
> (3) Date of execution of Grant Being Terminated: December 1st, 1994.
>
> (4) Right of Publication: The grant covered the grant of publication of the Compositions. The compositions were published under the grant in the year 1995.
>
> (5) Works subject to the termination: The Compositions (as defined above), authored by Amilcar Jesus Boscan Parra.
>
> (6) Effective Date of Termination: January 1st, 2031.

The Termination Notice was recorded with the Copyright Office on May 8, 2026 (Vol. 10004, Doc. No. 212).

36.    Plaintiff seeks a declaratory judgment that the Termination Notice was effective,

and that all rights conveyed by Plaintiff to Defendant under the Songwriter Agreement shall revert to Plaintiff no later than January 1, 2031.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

37.     Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth in full herein.

38.     Plaintiff conveyed his rights in the Compositions to Defendant, in exchange for, *inter alia*, Defendant paying Plaintiff a portion of royalties that Defendant collected and sending regular royalty reports to Plaintiff.

39.     Defendant materially breached the Songwriter Agreement by failing to pay Plaintiff the royalties required under the Songwriter Agreement.

40.     Defendant materially breached the Songwriter Agreement by failing to send Plaintiff royalty reports as required by the Songwriter Agreement.

41.     Defendant continues to refuse to pay the royalties due to Plaintiff, and continues to refuse to provide the reporting it was required to send to Plaintiff.

42.     Plaintiff has been damaged by Defendant's knowing and willful material breaches of the Songwriter Agreement in that Plaintiff has been deprived of the royalties to which Plaintiff is entitled, and in that Plaintiff has been deprived of the information that would have been contained in the royalty statements.

## SECOND CAUSE OF ACTION
### (Rescission (in the Alternative))

43.     Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth in full herein.

7

44.     On or about December 1, 1994, Plaintiff and Defendant entered into the Songwriter Agreement, pursuant to which Plaintiff granted certain rights in the Compositions to Defendant.

45.     Defendant materially breached the Songwriter Agreement by, *inter alia*:

    a.     failing to pay royalties due and owing;

    b.     failing to provide required accountings and royalty statements; and

    c.     failing to properly administer and attribute the Compositions.

46.     Defendant's breaches go to the root of the Songwriter Agreement and defeat its essential purpose.

47.     Defendant's conduct has substantially defeated the purpose of the Songwriter Agreement and deprived Plaintiff of the benefit of the bargain.

48.     Monetary damages alone are inadequate to remedy Defendant's misconduct because:

    a.     Defendant has failed to provide reliable accountings;

    b.     the scope of misappropriated revenues cannot be fully determined without equitable relief; and

    c.     Defendant has held itself out, and may be continuing to hold itself out, as owner and/or author of the Compositions.

49.     Plaintiff has no adequate remedy at law.

50.     The parties can be substantially restored to the *status quo ante* because:

    a.     the Compositions can be revested in Plaintiff; and

    b.     any revenues received by Defendant can be accounted for and disgorged.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment – in the Alternative to Breach of Contract)

51.    Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth in full herein.

52.    Defendant has been exploiting the musical compositions since 1994, and collecting royalties from said exploitation that it has not shared with Plaintiff.

53.    Defendant received benefit from the royalties it has collected, and has retained for itself the benefit of those royalties, without providing any value to Plaintiff.

54.    Defendant has failed to and refused to compensate Plaintiff for the value of the royalites it has collected from the exploitation of the Original Compositions and Plaintiff has no reason to believe that Defendant will compensate or account to Plaintiff for any future exploitation of the Compositions.

55.    There is no adequate remedy at law.

56.    Equity and good conscience require Defendant to make restitution to Plaintiff in an amount equal to 100% of all monies Defendant has collected from the exploitation of the Compositions.

## FOURTH CAUSE OF ACTION
### (Conversion – in the Alternative to Breach of Contract)

57.    Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth in full herein.

58.    Plaintiff conveyed his rights in the Compositions to Defendant in 1994, on condition that Defendant share the royalties collected from the exploitation of the Compositions with Plaintiff.

59.    Defendant retained the rights to the Compositions but failed to share the royalties with Plaintiff.

9

60.    Defendant has acted illegally, recklessly, and maliciously in failing and refusing to share the royalties with Plaintiff.

61.    The Compositions, and the royalties collected from the exploitation of the Compositions, are the property of Plaintiff.

62.    Defendant has improperly exercised dominion over the Compositions in derogation of Plaintiff's rights, and to the exclusion of Plaintiff's rights.

63.    Defendant has improperly exercised dominion over the royalties collected from the exploitation of the Compositions, in derogation of Plaintiff's rights, and to the exclusion of Plaintiff's rights.

64.    Defendant has converted Plaintiff's Compositions.

65.    Defendant has converted Plaintiff's royalties arising from the exploitation of the Compositions.

66.    Defendant is liable to Plaintiff for damages of at least $300,000.

## FIFTH CAUSE OF ACTION
### (Declaratory Judgment of Copyright Termination (17 U.S.C. § 203))

67.    Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth in full herein.

68.    Plaintiff and Defendant entered into the Songwriter Agreement effective December 1, 1994.

69.    17 U.S.C. § 203(a)(3) provides, in pertinent part, that "[t]ermination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant."

70.    35 years from December 1, 1994 is December 1, 2029, and five years from December 1, 2029 is December 1, 2034.

71.     Thus, the window for the Termination Date was December 1, 2029 through December 1, 2034 ("Termination Window").

72.     January 1, 2031 – the effective date of termination identified in the Termination Notice, is within the Termination Window.

73.     17 U.S.C. § 203(a)(4) provides, in pertinent part, that "[t]he notice shall state the effective date of the termination, which shall fall within the five-year period specified by clause (3) of this subsection, and the notice shall be served not less than two or more than ten years before that date."

74.     10 years before January 1, 2031 is January 1, 2021, and two years before January 1, 2031 is January 1, 2029.

75.     Thus, the window for service of the Termination Notice was January 1, 2021 through January 1, 2029 ("Notice Window").

76.     Plaintiff served the Termination Notice on Defendant on July 3, 2024, which was within the eight-year Notice Window.

77.     Plaintiff's Termination Notice – served on July 3, 2024 and identifying a Termination Date of January 1, 2031, comports with 17 U.S.C. § 203.

78.     Plaintiff seeks a declaration that the Termination Notice comports with 17 U.S.C. § 203, and therefore that the Termination Notice is valid and effective.

79.     Plaintiff seeks a further declaration that, because the Termination Notice is valid and effective, the Songwriter Agreement is terminated, no later than January 1, 2031.

80.     On multiple occasions since July 3, 2024, Defendant has disputed the validity of the Termination Notice, and disputed whether the Songwriter Agreement has been terminated,

11

and has further disputed whether termination of the Songwriter Agreement would <u>ever</u> be permitted.

81.     Pursuant to 28 U.S.C. §§ 2201 and 2202, an actual and justiciable controversy exists between the parties concerning the validity of the Termination Notice and termination of the Songwriter Agreement. Plaintiff seeks a declaration of the parties' respective rights and obligations, including a declaration that Termination Notice was valid, and that the Songwriter Agreement shall be terminated effective no later than January 1, 2031.

### SIXTH CAUSE OF ACTION
### (Violation of the Digital Millennium Copyright Act (17 U.S.C. § 1202))

82.     Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained above as though the same were set forth in full herein.

83.     Plaintiff is the sole author and original owner of TDT .

84.     TDT constitutes a "work" protected under the Copyright Act.

85.     Information identifying the author and writer of a musical composition – including songwriter credit and attribution – constitutes "copyright management information" within the meaning of 17 U.S.C. § 1202(c).

86.     Defendant, without authorization, knowingly provided and distributed false copyright management information in connection with TDT.

87.     Specifically, Defendant registered and/or caused to be registered TDT with Broadcast Music, Inc. ("BMI") and associated systems, falsely identifying Colon as the "writer" of the Compositions, and omitting Plaintiff as the true author.

88.     Defendant knew that such information was false at the time it was provided and disseminated.

89.     Defendant also knew that such false information would induce, enable, facilitate and/or conceal acts of copyright infringement.

90.     Defendant distributed, communicated, and made available the Compositions to the public and to licensees – including through performance rights systems and licensing databases – while conveying and relying upon such false copyright management information.

91.     Defendant acted with the intent to induce, enable, facilitate, or conceal infringement and/or unauthorized exploitation of Plaintiff's rights in the Compositions.

92.     As a direct and proximate result of Defendant's conduct, Plaintiff has been injured, including but not limited to:

      a.     loss of royalties and licensing income;

      b.     diversion of performance royalties through BMI and related channels;

      c.     impairment of Plaintiff's ability to control and license the Compositions; and

      d.     damage to Plaintiff's authorship attribution.

93.     Defendant's conduct was willful within the meaning of 17 U.S.C. § 1202.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Amilcar Boscan demands judgment against Defendant ElMalo, Inc. d/b/a Willie Colon Music Company as follows:

      a.     For damages in an amount as may be awarded at trial of at least $300,000;

      b.     For exemplary and punitive damages against Defendant in an amount as the Court may determine to halt such conduct;

      c.     For a declaratory judgment that the Termination Notice is valid and effective;

13

d.       For a declaratory judgment that the Songwriter Agreement is terminated effective no later than January 1, 2031;

e.       For statutory damages under 17 U.S.C. § 1203(c), or, in the alternative, actual damages and Defendant's profits;

f.       For injunctive relief, including correction of false CMI and attribution;

g.       In the alternative, for a declaration that the Agreement is rescinded and void *ab initio* (or, in the alternative, rescinded as of a date determined by the Court);

h.       For an order restoring all rights in the Compositions to Plaintiff;

i.       For restitution and disgorgement of all revenues improperly received by Defendant;

j.       For an accounting of all exploitation of the Compositions; and

k.       For costs and attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5); and

l.       For pre-judgment and post-judgment interest according to law; and

m.       For such other and further relief as this Court deems just and proper.

Dated:  New York, New York
      July 20, 2026

PARNESS LAW FIRM, PLLC

By:___/s/ Hillel I. Parness_____
Hillel I. Parness (HP-1638)
136 Madison Ave., 6th Floor
New York, New York 10016
(212) 447-5299
hip@hiplaw.com
*Attorneys for Amilcar Boscan*

14