PARNESS LAW FIRM, PLLC
136 Madison Avenue, 6th Floor • New York, New York 10016
Hillel I. Parness • www.hiplaw.com • hip@hiplaw.com
(Cell) 646-526-8261 • (Office) 212-447-5299 • (Fax) 212-202-6002

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/5/2026

MEMO ENDORSED

Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street, Courtroom 218
White Plains, NY 10601

Re: *Boscan v. Elmalo, Inc. d/b/a Willie Colon Music Company*, 7:26-cv-06148 (NSR)

Dear Judge Román:

I represent Plaintiff Amilcar Boscan in the above-referenced matter. In accordance with Rule 3.A of Your Honor's Individual Practices in Civil Cases, and the Court's September 28, 2026 Order (ECF 10), Plaintiff submits this response in opposition to Defendant's September 25, 2026 pre-motion letter (ECF 9).

See pg. 3

This Court accepts well-pleaded facts as true and asks whether they plausibly support relief, while rejecting conclusory recitals. *Aghaeepour v. Northern Leasing Systems, Inc.*, No. 14-cv-5449 (NSR), ECF 62, at 4–5 (S.D.N.Y. May 8, 2019). In the context of music industry litigation, allegations of improper deductions, under-reporting and failure to account are cognizable at the pleading stage without requiring a plaintiff to itemize every specific financial figure, particularly where the defendant controls the relevant records and accounting obligations. *See 19 Recordings Ltd. v. Sony Music Entertainment*, 97 F. Supp. 3d 433, 441-47 (S.D.N.Y. 2015).

**Defendant Cannot Rely on Accountings It Allegedly Never Rendered**

Defendant faults Plaintiff for not identifying particular receipts, deductions or unpaid amounts. But the parties' Agreement (ECF 1-1) obliges Defendant to compute, account for and pay royalties to Plaintiff, and Plaintiff alleges its own performance, Defendant's exploitation of the musical work, and Defendant's complete and ongoing failure to pay and report to Plaintiff. ECF 1 ¶¶ 15-23, 37-42. Having failed to render accounting statements based on information in the sole custody of Defendant, Defendant cannot argue for dismissal for inadequate detail. The publicly-available exploitation of the song Talento de Television ("TDT") supports an inference of receipts, and Defendant's records will establish the receipts and permissible deductions.

The contractual-waiver argument exposes the same problem. Section 5(b) of the Agreement imposes a one-year limit to challenge rendered royalty statements, but certainly cannot be read to say that the one-year limit applies to statements never rendered. Plaintiff alleges that Defendant "never sent Plaintiff the royalty statements as required by the Songwriter Agreement." ECF 1 ¶22. In any event, a court cannot apply an incontestability provision without knowing the dates on which the statements were

actually rendered; absent a rendered statement with an identifiable date, the one-year objection period cannot begin to run. *See Music Royalty Consulting, Inc. v. Reservoir Media Management, Inc.*, No. 18-cv-9480 (CM)(KNF), 2019 WL 1950137, at *11 (S.D.N.Y. Apr. 17, 2019). Certainly, the asserted six-year statutory cutoff does not dispose of alleged failures to account and pay within the six years preceding suit, and because a MUSIC PUBLISHER's obligation to account for and pay royalties is a continuing one, each successive failure to account and pay begins the limitations period anew and breaches within the six years preceding suit are unquestionably timely; whether any earlier period is time-barred – or tolled – cannot be resolved on a motion to dismiss. *See Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 477-79 (S.D.N.Y. 2009).

**Defendant's Alleged Repudiation Presents a Current Termination Dispute**

Defendant's focus on the 2031 effective date of the Termination overlooks the present dispute plainly alleged in the Complaint: "[o]n multiple occasions since July 3, 2024, Defendant has disputed the validity of the Termination Notice, and disputed whether the Songwriter Agreement has been terminated, and has further disputed whether termination of the Songwriter Agreement would ever be permitted." ECF 1 ¶ 80. Plaintiff seeks resolution of that already-existing dispute, not an advisory ruling about hypothetical conduct in 2031. *Id.* ¶¶80–81. Courts in this District entertain declaratory claims testing the validity of an already-served termination notice before its effective date, where the dispute casts a present cloud over the parties' copyright positions. *See Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265, 276-79 (S.D.N.Y. 2020). The Second Circuit likewise resolves the validity of a served termination notice before its effective date. *See Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18 (2d Cir. 2015).

Defendant falsely describes Exhibit B – the Termination Notice – as a "cover letter," when in fact it is a letter indicating delivery by "Certified Mail, Return Receipt Requested" and attaching a signed termination notice that includes all of the required information. ECF 1 ¶¶34-35 & Ex. B. The isolated reference in Exhibit B to a "Recording Agreement" is at most a harmless ministerial error that does not negate the substance of the notice. 37 C.F.R. §201.10(e)(1); *Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265, 275–76 (S.D.N.Y. 2020).

**The DMCA Claim Alleges Knowing Dissemination of False Authorship Information**

That Plaintiff is the sole author of TDT is not in dispute. Nevertheless, according to the complaint, when Defendant registered TDT with BMI (an organization that collects earnings derived from the public performance of songs and disburses those earnings to the music publisher(s) and, separately, to the author(s) of each song), Defendant removed Plaintiff's authorship credit and falsely registered Willie Colon, owner of the Defendant as the sole author of TDT.

Defendant characterizes Count VI as a standalone BMI listing issue, but that is incorrect. The Complaint alleges that Defendant caused TDT to be registered with BMI and associated systems under Colon's name instead of Boscan's, and conveyed and relied on that false attribution while distributing and making the Compositions available to the public and licensees. ECF 1 ¶¶ 33, 83-90. Section 1202(a) of the Digital Millennium Copyright Act ("DMCA") prohibits knowingly providing or distributing false Copyright Management Information ("CMI") with the requisite infringement-related intent, and Section 1202(c)(2) includes author-identifying information, in the definition of CMI. Defendant argues that false BMI information cannot be CMI for purposes of the DMCA, but cites no authority for that proposition. Plaintiff's theory must be evaluated on those alleged connections, not reduced to an isolated administrative entry.

Plaintiff alleges that Defendant knowingly conveyed false authorship information in connection with exploitation of TDT, and intended to facilitate or conceal infringement. ECF 1 ¶¶87-91. Defendant's knowledge that Plaintiff was the true author of the work is plain in the parties' signed Agreement. ECF 1-1. The limitations argument is similarly conditional: Defendant says the claim is barred if the violation was discoverable before July 20, 2023, then faults Plaintiff for not pleading when registration or discovery occurred. Defendant cannot have it both ways and expect to prevail on its planned motion.

**The Alternative Claims Do Not Defeat the Contract or Federal Claims**

Plaintiff pleads rescission based on alleged substantial nonpayment and complete failure to account. ECF 1 ¶¶43-50. The obligation to account for and pay royalties goes to the essence of a songwriter agreement. This is especially true on the facts of this case, as the songwriter received no upfront payment or advance against future royalties in exchange for assigning his rights in the song, and thus Defendant's sustained failure to perform that obligation is a material breach rather than a mere pleading defect. *See Kama Rippa Music, Inc. v. Schekeryk*, 510 F.2d 837, 839–40 (2d Cir. 1975). The question of whether damages adequately remedy those breaches is distinct from the question of whether the contract claim is sufficiently pleaded. Rule 8 plainly allows for pleading in the alternative and sustaining those claims throughout the litigation.

Plaintiff respectfully submits that Defendant has no plausible basis to dismiss the Complaint, and the Court and the parties would be best served by litigating this case on the merits rather than engaging in unnecessary and improvident motion practice.

Respectfully submitted,

Hillel I. Parness

cc: Counsel of Record (via ECF)

**The parties shall follow the below briefing schedule: Defendants shall serve their opening brief on or before November 3, 2026. Plaintiff shall serve its opposition on or before December 3, 2026. Defendants shall serve their reply on or before December 18, 2026. The parties shall file all motion papers on December 18, 2026.**

**Dated: October 5, 2026**
**White Plains, NY**

Nelson S. Román, U.S. District Judge